## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RESTORATION HARDWARE, INC., a Delaware corporation, and RH US, LLC, a Delaware limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> HAYNES FURNITURE COMPANY INCORPORATED, a Virginia corporation; NEW VENTURE HOLDINGS, LLC d/b/a THE DUMP, a Virginia limited liability corporation; and HIGHLAND LOMBARD, LLC, an Illinois limited liability company, <br><br> Defendants. | **COMPLAINT** |

For their Complaint, Plaintiffs Restoration Hardware, Inc. and RH US, LLC (collectively, "RH") allege the following:

### NATURE OF THE CASE

1.      This is an action by RH, a well-known retailer of high-quality home furnishings, against the owners of "The Dump," a chain of discount furniture stores, for copyright infringement, false advertising, trademark infringement, trademark counterfeiting, false designation of origin, breach of contract, and other related claims under federal, state and common law. The Dump has repeatedly engaged in false advertising, unfair competition and other conduct intended to deceive consumers into believing that The Dump sells "Restoration Hardware" furniture, furniture that is identical to "Restoration Hardware" furniture, or furniture of comparable quality from the same manufacturers, for substantially lower prices.  The Dump also has infringed RH's intellectual property rights by using RH's trademarks and copyrights to sell knockoffs of RH furniture.  Despite repeated efforts by RH to stop The Dump from engaging in its pattern of infringing and deceitful conduct, including sending multiple cease and desist letters, filing prior litigation, and entering into a settlement agreement and stipulated injunction,

The Dump has recommenced its unlawful conduct. RH is once again forced to file a lawsuit to stop The Dump from violating RH's valuable intellectual property and deceiving consumers.

## JURISDICTION AND VENUE

2.      This action arises under the Copyright Act, 17 U.S.C. § 101 *et seq.*, the Lanham Act, 15 U.S.C. § 1051 *et seq.*, Illinois state law, and the common law. This Court has subject matter jurisdiction under 15 U.S.C. § 1121, 28 U.S.C. § 1338(a) and (b), and 28 U.S.C. § 1367(a).

3.      As provided further below, Defendants are subject to personal jurisdiction in this district because they own and operate a location of "The Dump" in this judicial district and they are engaged in the conduct that is the subject of this action in this judicial district.

4.      As provided further below, venue is proper in this judicial district under 28 U.S.C. § 1391, because, among other things, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, namely, the Defendants' unlawful conduct described below.

## THE PARTIES

5.      Plaintiff Restoration Hardware, Inc. is a Delaware corporation with its principal place of business at 15 Koch Road, Corte Madera, California 94925.

6.      Plaintiff RH US, LLC is a Delaware limited liability company with its principal place of business at 15 Koch Road, Corte Madera, California 94925.

7.      Upon information and belief, Defendant Haynes Furniture Company Incorporated ("Haynes") is a Virginia corporation with its principal place of business at 5324 Virginia Beach Boulevard, Virginia Beach, Virginia 23462.

8.      Upon information and belief, Defendant New Venture Holdings, LLC ("New Venture") is a Virginia limited liability company with its principal place of business at 5324 Virginia Beach Boulevard, Virginia Beach, Virginia 23462.

9.      Upon information and belief, Defendant Highland Lombard, LLC ("Highland") is an Illinois limited liability company with its principal place of business at 2860 S. Highland

Avenue, Lombard, Illinois 60148.

10.    Haynes, New Venture, and Highland are referred to collectively as the "Defendants."

11.    Upon information and belief, Haynes and New Venture own and operate a chain of discount furniture stores that operates under the fictitious name "The Dump." Upon information and belief, Highland is a wholly owned subsidiary of Haynes and New Venture, and the operating entity for the "The Dump" store located in Lombard, Illinois.

12.    Upon information and belief, Haynes, New Venture, and Highland control all aspects of The Dump store in Lombard, Illinois, including merchandise, in-store marketing materials and displays, advertising, and the hiring and training of sales associates. Upon further information and belief, Haynes, New Venture, and Highland receive substantial revenue from their ownership of The Dump store in Lombard, Illinois.

13.    Upon information and belief, Haynes and New Venture, through direct ownership and their ownership of subsidiaries, own, operate, direct, and control all other The Dump stores located nationwide. Upon information and belief, the control Haynes and New Venture exercise over all other The Dump stores includes controlling all aspects of merchandise, in-store marketing materials and displays, advertising, and the hiring and training of sales associates.

14.    Upon information and belief, Haynes has substantial, continuous, and systematic contacts with the State of Illinois and this judicial district because, through its ownership of The Dump store in Lombard, Illinois, and close working relationship with New Venture and Highland, it regularly solicits and conducts business within this district, owns or leases retail space within this district, and derives substantial revenue from its services and the sales of goods within this district. Additionally, upon information and belief, Haynes has power and control over the activities of The Dump store in Lombard, Illinois and all other "The Dump" stores, such that it has willfully, intentionally, and/or knowingly infringed or otherwise violated the trademark rights of Plaintiffs in the RESTORATION HARDWARE Marks (defined below) and the copyright rights of Plaintiffs in the RH Copyrighted Works (defined below), as fully

2011510050_4

explained below.

15. Upon information and belief, New Venture has substantial, continuous, and systematic contacts with the State of Illinois and this judicial district because, through its ownership of The Dump store in Lombard, Illinois, and close working relationship with Haynes and Highland, it regularly solicits and conducts business within this district, owns or leases retail space within this district, and derives substantial revenue from its services and the sale of goods within this district. Additionally, upon information and belief, New Venture has power and control over the activities of The Dump store in Lombard, Illinois, and all other The Dump stores, such that it has willfully, intentionally, and/or knowingly infringed or otherwise violated the trademark rights of Plaintiffs in the RESTORATION HARDWARE Marks (defined below) and the copyright rights of Plaintiffs in the RH Copyrighted Works (defined below), as fully explained below.

16. Upon information and belief, Highland has substantial, continuous, and systematic contacts with the State of Illinois and this judicial district because, through its ownership of The Dump store in Lombard, Illinois, and close working relationship with Haynes and New Venture, it regularly solicits and conducts business within this district, owns or leases retail space within this district, and derives substantial revenue from its services and the sale of goods within this district. Additionally, upon further information and belief, New Venture has power and control over the activities of The Dump" store in Lombard, Illinois, such that it has willfully, intentionally, and/or knowingly infringed or otherwise violated the trademark rights of Plaintiffs in the RESTORATION HARDWARE Marks (defined below) and the copyright rights of Plaintiffs in the RH Copyrighted Works (defined below), as fully explained below.

## FACTS COMMON TO ALL CLAIMS

### Background on RH

17. RH is an innovative and popular luxury brand in the home furnishings marketplace. RH designs, manufactures and sells a wide variety of home furnishings, including furniture, lighting, bed, bath, hardware, and other products under a variety of marks including

-4-

RESTORATION HARDWARE and RH.

18.     RH was founded in Eureka, California, in 1979.  Over the past 36 years, RH has grown to 65 retail stores (known as "galleries") and 26 outlets throughout the United States, plus additional stores in Canada.  RH's outlet stores sell RH products at a discount.  RH also holds warehouse sales several times a year.

19.     RH's channels of distribution include retail stores, outlets, catalogs (known as "source books"), and the Internet.  RH has distributed more than 95 million source books throughout the United States in the last three fiscal years alone.  RH's websites, including its main website at <RH.com>, have received more than 80 million unique visits in the last three fiscal years alone.  As a result, tens of millions of U.S. residents have been exposed to the RESTORATION HARDWARE and RH marks.

20.     RH spends a great deal of time and effort ensuring that its furniture, designs, and marketing materials are of the highest quality and reflect the latest in home furnishing trends. This effort includes working with top designers, artisans, and photographers from around the world on the designs for RH's products, and selecting top-quality manufacturers to produce those products.

21.     Upon information and belief, as a result of RH's long, extensive, and widespread use of the distinctive RESTORATION HARDWARE and RH marks, RH has acquired common law rights in these marks in connection with furniture, home furnishings, and related products.

22.     In addition to its common law rights, RH owns several trademark registrations for the RESTORATION HARDWARE and RH marks on the Principal Register of the United States Patent and Trademark Office, including the following:

| Mark | Reg. No. | Reg. Date | Goods and Services |
|------|----------|-----------|--------------------|
| RESTORATION HARDWARE | 2048579 | April 1, 1997 | "Retail store services featuring furniture, accessories and hardware," in Class 42. |
| RESTORATION HARDWARE | 4188892 | August 14, 2012 | "Furniture" in Class 20, among numerous other goods and services. |

| Mark | Reg. No. | Reg. Date | Goods and Services |
|------|----------|-----------|--------------------|
| RESTORATION HARDWARE | 4342527 | May 28, 2013 | "Retail store services, catalog mail-order services, and online retail store services featuring a wide range of consumer goods," including "furniture," in Class 35. |
| RH | 4621887 | October 14, 2014 | "Retail store services, catalog mail-order services, and online retail store services featuring a wide range of consumer goods" including "furniture" and a number of other goods, in Class 35. |
| RH | 4708767 | March 24, 2015 | "Furniture" in Class 20, among numerous other goods. |

True and accurate copies of the registration certificates for the above-referenced registrations are attached hereto as **Exhibit A**. Registration No. 2,048,579 is incontestable pursuant to 15 U.S.C. § 1065 and none of the referenced registrations have been cancelled, abandoned, or revoked. (RH's registered and common law trademark rights in the RESTORATION HARDWARE and RH marks are collectively referred to as the "RESTORATION HARDWARE Marks".)

23. As a result of RH's long, extensive, and widespread use of the distinctive RESTORATION HARDWARE Marks, consumers across the United States have come to identify the RESTORATION HARDWARE Marks with high-quality furniture and home furnishings emanating exclusively from RH.

24. As part of consumers' familiarity with RH, its trademarks, and its furniture, consumers often refer to RH as "RESTO," a shorthand for "RESTORATION HARDWARE." As a result, consumers, particularly consumers with an interest in furniture and home furnishings, are well aware that a reference to "RESTO" in the furniture context is meant as a reference to RH and its RESTORATION HARDWARE Marks. Upon information and belief, through the long, extensive, and widespread use of the "RESTO" mark, RH has acquired common law rights in the "RESTO" mark in connection with furniture, home furnishings, and related products.

25. RH is well known by consumers and in the home furnishings industry for

producing and distributing large catalogs (known as "source books") a few times a year, as opposed to the standard industry practice of smaller catalogs distributed more frequently.

## Defendant's Unlawful Conduct

26.     Defendants own and operate a chain of discount furniture stores called "The Dump" with 10 locations in the United States, including in Lombard, Illinois.

27.     Defendants' advertising states that it sells the same furniture sold by retail stores at lower prices. For example, in commercial advertising on its website at <TheDump.com>, The Dump claims that "We're where the furniture industry Dumps their closeouts, overstocks and design samples 30 to 70% off price" and that it "bring in new closeouts, cancelled orders, overstocks and more from the world's "best furniture brands." *See* **Exhibit B.** One of the "best furniture brands" that The Dump is referring to is the RESTORATION HARDWARE brand. Despite Defendants' claims, however, The Dump does not now, and has never, sold furniture from RH.

28.     Defendants have attempted to free ride on RH's substantial goodwill through longstanding efforts to deceive consumers into believing that the furniture sold by The Dump is RESTORATION HARDWARE brand furniture or is the same as the furniture sold by RH. Defendants began this unlawful conduct at least as early as 2013, when RH caught them prominently featuring the RESTORATION HARDWARE mark in advertising.

29.     For example, on or around March 17, 2013, The Dump published an advertisement in newspapers around the country stating "THE QUALITY OF RESTORATION HARDWARE" at "45 to 65% OFF THEIR PRICES." ("March 2013 Advertisement"). A true and accurate copy of this advertisement is attached as **Exhibit C**. The March 2013 Advertisement falsely claimed that The Dump was selling furniture that was the same quality as furniture sold by RH for 45% to 65% off of the prices charged by RH. Upon information and belief, most if not all of the furniture referenced by The Dump were knockoffs of furniture sold by RH and inferior in quality.

30.     On or around January 19, 2014, The Dump published an advertisement containing

the headline "Dump High Markups Pay Half the Price," followed by photos of furniture with captions following the format "Compare to Restoration Hardware $_____. Our Price $_____", where the price shown for The Dump piece was less than half the price shown for the Restoration Hardware piece. (The "January 2014 Advertisement"). A true and accurate copy of the advertisement is attached as **Exhibit D**. The January 2014 Advertisement falsely represented that the products sold by The Dump are identical (or, at a minimum, comparable) to those sold by Restoration Hardware for "half the price."

31. On or around August 15, 2014, The Dump began running a television commercial that began by stating "IF YOU BOUGHT FURNITURE AT RESTORATION HARDWARE . . . THIS COULD MAKE YOU SICK." (The "August 2014 Advertisement"). The commercial went on to claim that The Dump was selling furniture that was the same as or comparable to specific models of furniture that consumers could buy from RH for one third to one half off of their prices. The August 2014 Advertisement falsely claimed that The Dump was selling furniture identical or comparable to that sold by RH for one half to one third of the prices charged by RH. Upon information and belief, most if not all of the furniture pieces referenced by the August 2014 Advertisement were knockoffs of furniture sold by RH and inferior in quality based on objective standards.

32. The Dump's CEO, E.J. Strelitz, also made false or misleading statements on The Dump's website to advertise The Dump's knockoffs. For example, Mr. Strelitz was quoted as saying "Right now, we have a sofa that is identical to one that retails for $3,900 at Restoration Hardware in our stores for $2,295." (<www.TheDump.com/Dump_Mentions.asp>, hereinafter referred to as the "August 1 Statement," a printout of the webpage is attached as **Exhibit E**). Upon information and belief, the sofa referenced was a knockoff of inferior quality.

33. On October 6, 2014 RH, along with another furniture retailer, filed a lawsuit against Defendants in this Court, captioned *Euromarket Designs, Inc. et al v. Haynes Furniture Company Incorporated et al*, Case No. 1:14-cv-07802 (the "2014 Action"). The 2014 Action was settled by the parties through a Settlement Agreement and Release (the "Settlement

Agreement") and a stipulated Permanent Injunction and Dismissal with Prejudice (the "Injunction"). The Injunction prohibited The Dump from using the RESTORATION HARDWARE Marks, or confusingly similar variations, in any advertising or promotion. The Settlement Agreement is confidential and the terms cannot be disclosed in this Complaint.

34.     Despite the existence of both the Settlement Agreement and the Injunction, RH discovered that Defendants have returned to their unlawful conduct, in violation of both the Settlement Agreement, the Injunction, and applicable law. Indeed, although this Court enjoined Defendants Haynes and New Venture from using the RESTORATION HARDWARE mark or any confusingly similar mark in advertising or promotion, they knowingly and willfully violated the letter and intent of the Injunction by engaging in the conduct set forth below.

35.     In or around February 2016, The Dump created and broadcast a television commercial that referred to RH by referencing "America's most prestigious store and their phonebook-sized catalog" that had "sue[d]" The Dump. (The "February 2016 Advertisement") The Dump was obviously referring to RH since RH is one of America's most prestigious stores, is known for its large catalogs, and had previously sued The Dump for false advertising and related claims. In the February 2016 Advertisement, screenshots of which are shown below and attached as **Exhibit F**, Defendants use this reference to RH to claim that The Dump sells "THE SAME FURNITURE" as RH at "A THIRD OF THEIR PRICE." The advertisement also claims that The Dump sells "their $3,400 . . . sofa . . . at $1,196."

 



36.     The February 2016 Advertisement's reference to RH through the use of the "America's most prestigious store and their phonebook-sized catalog" and previous lawsuit comments is a violation of the Settlement Agreement.

37.     The February 2016 Advertisement falsely claims that The Dump is selling "the same furniture" as that sold by RH for one third of the prices charged by RH. Upon information and belief, none of the furniture referenced by the February 2016 Advertisement is "the same" as furniture sold by RH, and most if not all of the furniture pieces referenced by the advertisement are knockoffs of furniture sold by RH and inferior in quality based on objective standards.

38.     Defendants ramped up their unlawful conduct by using RH's own copyrighted photos of RH products in The Dump stores to sell knockoffs of RH's Cloud line of furniture.

39.     RH spends a great deal of time, effort, and money taking photographs of its products for use in its marketing materials, source books, online website, and stores. RH took seven photographs of its Cloud modular sofa, copies of which are attached as **Exhibit G**. RH obtained copyright registration VA 2-014-014 for its web site, attached as **Exhibit H**, which includes the seven photographs of its Cloud modular sofa ("RH Copyrighted Works").

40.     Defendants reproduced and publicly displayed the RH Copyrighted Works on their own in-store displays (the "Infringing Displays") in an effort to promote a knockoff version of the Cloud modular sofa. Photographs of the Infringing Displays within The Dump stores are as shown below:

2011510050_4

 

41.     Upon information and belief, the knockoff merchandise depicted in the Infringing Displays is inferior in quality to RH's Cloud products based on objective standards.

42.     Upon information and belief, Defendants instruct their sales associates at The Dump stores to falsely represent to customers that certain furniture pieces that they sell are from "Restoration Hardware," identical to furniture sold by "Restoration Hardware," and/or are from the same manufacturers as those that manufacture furniture for "Restoration Hardware" and are of the same quality.  These false and misleading statements have included, but are not limited to:

    a.     Multiple sales associates in The Dump store in Lombard, Illinois, represented to customers that The Dump sells "Restoration Hardware" furniture.  At least one sales associate in The Dump store in Lombard, Illinois, told a customer that The Dump's furniture was "identical" to furniture from "Restoration Hardware."

    b.     A sales associate in The Dump store in Tempe, Arizona, represented to a customer that certain of The Dump's couches were from "Restoration Hardware."

    c.     A sales associate in The Dump store in Houston, Texas, represented to a customer that The Dump had a "Restoration Hardware" section of the store, that multiple rugs were from "Restoration Hardware," and that those rugs had the same warranties as rugs purchased from "Restoration Hardware."

    d.     A sales associate in The Dump store in Turnersville, New Jersey, represented to a customer that the majority of the items in a certain section of The Dump store were from "Restoration Hardware."

2011510050_4

e.     A sales associate in The Dump store in Tempe, Arizona, represented to a customer that "this is Restoration Hardware, the Cloud, the sectional, the Brompton, that's all Restoration Hardware."

f.     A sales associate in The Dump store in Tempe, Arizona, represented to a customer that The Dump carries the same products as "Restoration Hardware," and while the furniture is not branded "Restoration Hardware," they are the same products and from the same manufacturer as the furniture sold by "Restoration Hardware."

g.     A sales associate in The Dump store in Richmond, Virginia, represented to a customer that The Dump carries "Restoration Hardware" furniture that is spread throughout the store.

h.     A sales associate in The Dump store in Oaks, Pennsylvania, represented to a customer that certain pieces of furniture were "Restoration Hardware furniture" but they cost "half the price."

43.     Upon information and belief, all of the referenced statements from the Defendants' sale associates are false and misleading. Upon information and belief, all of the referenced statements from the Defendants' sales associates are part of Defendants' efforts to free ride off of the goodwill that RH has established in the RESTORATION HARDWARE Marks, and to deceive consumers into believing that the furniture sold by The Dump stores will be the same as that available at RH stores.

44.     Upon information and belief, the referenced statements from the Defendants' sales associates are a mere representative sample of what these sales associates have told and are instructed to tell customers. Upon information and belief, the Defendants have implemented a centrally orchestrated strategy to use the RESTORATION HARDWARE Marks to mislead customers into believing, incorrectly, that certain furniture pieces sold by The Dump are from RH, identical to furniture sold by RH, and/or from the same manufacturers as those that make furniture for RH.

45.     In addition, Defendants label certain pieces of furniture sold at The Dump as

-12-

"RESTO." This reference to a well-known nickname of RH is yet another attempt to mislead customers into believing, incorrectly, that those furniture items are from RH, identical to furniture sold by RH, and/or from the same manufacturers as those that make furniture for RH.

46. Defendants feature knockoffs of RH furniture in an area of The Dump stores known as "Restore." Since "Restore" is a variation of "Restoration," Defendants are using this reference in another attempt to confuse and mislead consumers.

47. The Dump's false and misleading statements set forth above are statements of a factual nature relating to the origin, quality and pricing of the furniture referenced by the statements. Indeed, there are objective standards for determining the quality of furniture, including, among other things, materials, construction, and finishes.

48. Upon information and belief, Defendants' false and misleading statements have deceived or have a tendency to deceive a substantial number of consumers into believing that they can buy RH furniture from The Dump or furniture that is identical to furniture sold by RH, and/or furniture from the same manufacturers as those that make furniture for RH.

49. Upon information and belief, the Defendants' false and misleading statements are material to consumers' purchasing decisions.

50. Upon information and belief, Defendants' false advertising campaign has diverted sales to The Dump.

51. Upon information and belief, Defendants' conduct has tarnished the goodwill and reputation symbolized by the RESTORATION HARDWARE Marks by associating those marks with the primarily cheap, lower quality products sold by Defendants at The Dump and with a trademark – THE DUMP – that literally means "a site for depositing garbage." Upon information and belief, Defendants' conduct also has tarnished the goodwill and reputation of RH to the extent that consumers believe that RH is either affiliated with The Dump as an outlet for the sale of RH furniture, that The Dump sells genuine RH furniture for a substantially lower price, or that The Dump sells furniture that is the same as furniture available from RH or from the same manufacturers.

-13-

52.    The Dump's infringing behavior has been successful, as RH is aware of at least one customer who purchased furniture from The Dump believing it to be authentic Restoration Hardware furniture, and contacted RH with questions about care.  Upon information and belief, this instance of actual confusion is only the tip of the iceberg, and there exist many other customers of The Dump who were confused into believing that they purchased authentic Restoration Hardware furniture from The Dump, when in fact they were sold knockoff furniture.

53.    Despite being put on notice on multiple occasions, including the 2014 Action and its subsequent Settlement Agreement and Injunction, The Dump has intentionally continued its false advertising campaign and other tortious conduct unabated.

## COUNT ONE
### (Copyright Infringement under
### 17 U.S.C. § 501 et seq.)

54.    Plaintiffs incorporate the foregoing allegations as though fully set forth herein.

55.    At all times relevant hereto, Plaintiffs have been the owner of the RH Copyrighted Works, which have been reproduced and publicly displayed by Defendants in The Dump stores to promote goods sold at the stores.

56.    Plaintiffs hold a copyright registration from the United States Copyright Office for the RH Copyrighted Works at issue in this matter.

57.    Plaintiffs did not authorize Defendants' copying, display, or distribution of any of the RH Copyrighted Works.

58.    Upon information and belief, Defendants knew or should have known that their acts constituted copyright infringement.

59.    Defendants' conduct was willful within the meaning of the Copyright Act.

60.    Plaintiffs have been damaged by Defendants' conduct, including, but not limited to economic losses.  Plaintiffs continue to be damaged by such conduct, and have no adequate remedy at law to compensate the Plaintiffs for all the possible damages stemming from the Defendants' conduct.

61.    Because of the willful nature of the Defendants' conduct, Plaintiffs are entitled to

-14-

2011510050_4

an award of statutory damages for each instance of copyright infringement by Defendants, attorneys' fees, and all associated costs.

## COUNT TWO
### (False Advertising under the
### Lanham Act, 15 U.S.C. § 1125(a)(1)(B))

62.     Plaintiffs incorporate by reference the preceding allegations as though fully set forth herein.

63.     Plaintiffs and Defendants are competitors in the sale of furniture.

64.     Defendants have made false and misleading statements of fact in commercial advertising or promotion in interstate commerce regarding the nature, characteristics, qualities, and/or origin of Plaintiffs' and Defendants' products and/or commercial activities.

65.     Defendants' false and misleading statements have actually deceived, or have a tendency to deceive, a substantial segment of the advertisements' audiences to form false beliefs that are material to the decision to purchase furniture from Plaintiffs and Defendants.

66.     As a proximate result of Defendants' false and misleading statements, Plaintiffs have suffered injury to their commercial interest in sales or reputation, either by direct diversion of sales from Plaintiffs to Defendants or by a loss of goodwill associated with Plaintiffs' products.

67.     Defendants' actions were and are willful and intentional acts, and were undertaken with the deliberate intent to trade on the reputation and goodwill of Plaintiffs, so as to justify the assessment of increased damages against them under 15 U.S.C. § 1117, in an amount to be determined at trial.

68.     Unless restrained by this Court, these acts will continue and will continue to cause serious and irreparable injury to Plaintiffs and their goodwill and reputation.

## COUNT THREE
### (Trademark Infringement under the
### Lanham Act, 15 U.S.C. § 1114(a))

69.     Plaintiffs incorporate by reference the preceding allegations as though fully set

2011510050_4

forth herein.

70.     Defendants' unlawful and improper actions are likely to cause confusion, mistake, or deception as to the source, origin, affiliation, association or sponsorship of Defendants' goods and/or services and falsely mislead consumers into believing that Defendants' goods and/or services are affiliated or connected with, or approved by, Plaintiffs.

71.     As a direct and proximate result of Defendants' infringement, Plaintiffs have suffered, and will continue to suffer, monetary loss and irreparable injury to their businesses, reputations, and goodwill.

72.     Accordingly, Defendants' use of the RESTORATION HARDWARE Marks and marks confusingly similar thereto constitutes infringement of Plaintiffs' registered trademarks, in violation of the Lanham Act, 15 U.S.C. § 1114.

73.     Defendants' acts of infringement have caused Plaintiffs to sustain monetary damage, loss and injury, in an amount to be determined at trial.

74.     Defendants have engaged in these activities willfully, so as to justify the assessment of treble damages and attorneys' fees under 15 U.S.C. § 1117.

75.     Defendants' acts of infringement, unless enjoined by this Court, will continue to cause Plaintiffs to sustain irreparable damage, loss and injury, for which Plaintiffs have no adequate remedy at law.

**COUNT FOUR**
**(Trademark Counterfeiting under**
**15 U.S.C. §§ 1114, 1116(d)(1) and 1117)**

76.     Plaintiffs incorporate by reference the preceding allegations as though fully set forth herein.

77.     Defendants used a spurious mark that is identical or substantially indistinguishable from Plaintiff's registered RESTORATION HARDWARE mark and which constitutes use of a counterfeit mark in violation of 15 U.S.C. § 1114, through their instructions to their sales associates and those same sales associates' representations to customers.

78.     Defendants' use of the RESTORATION HARDWARE mark was in connection

-16-

with goods covered by Plaintiffs' federal trademark registrations for the RESTORATION HARDWARE mark.

79.     Defendants are not, and have never been, authorized by Plaintiffs to use the RESTORATION HARDWARE mark in connection with furniture or any related goods.

80.     Defendants have engaged in these activities willfully and with knowledge of Plaintiffs' rights.

81.     Defendants' acts of infringement and unfair competition have caused Plaintiffs to sustain monetary damage, loss, and injury, in an amount to be determined at trial.

82.     Plaintiffs are entitled to recovery of their actual damages and Defendants' profits or, at Plaintiffs' election, up to $2,000,000 in statutory damages.

**COUNT FIVE**
**(False Designation of Origin under**
**the Lanham Act, 15 U.S.C. § 1125(a)(1)(A))**

83.     Plaintiffs incorporate by reference the preceding allegations as though fully set forth herein.

84.     Defendants have made false and misleading statements of fact in commercial advertising or promotion in interstate commerce regarding the nature, characteristics, qualities, and/or origin of Plaintiffs' and Defendants' products and/or commercial activities.

85.     Defendants' unlawful and improper actions are likely to cause confusion, mistake or deception as to the source, origin or sponsorship of Defendants' goods and/or services, and to falsely mislead consumers into believing that Defendants' goods and/or services are affiliated or connected with, or are approved by, Plaintiffs.

86.     Accordingly, Defendants' activities constitute false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

87.     Defendants' acts of infringement and unfair competition have caused Plaintiffs to sustain monetary damage, loss, and injury, in an amount to be determined at trial.

88.     Defendants have engaged in these activities willfully, so as to justify the

assessment of treble damages under 15 U.S.C. § 1117.

89.     Defendant's acts of infringement and unfair competition, unless enjoined by this Court, will continue to cause Plaintiffs to sustain irreparable damage, loss and injury, for which Plaintiffs have no adequate remedy at law.

**COUNT SIX**
**(Violation of the Illinois Consumer Fraud and**
**Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 505/1)**

90.     Plaintiffs and Defendants are direct competitors in the sale of furniture.

91.     Defendants have made false and misleading statements of fact in commercial advertising or promotion in Illinois regarding the nature, characteristics, qualities, and/or origin of Plaintiffs' and Defendants' products and/or commercial activities.

92.     Defendants' false and misleading statements have actually deceived, or have a tendency to deceive, a substantial segment of the advertisements' audiences to form false beliefs that are material to the decision to purchase furniture from Plaintiffs and Defendants.

93.     As a proximate result of Defendants' false and misleading statements, Plaintiffs have suffered injury to their commercial interest in sales or reputation, either by direct diversion of sales from Plaintiffs to Defendants or by a loss of goodwill associated with Plaintiffs' products.

94.     Unless restrained by this Court, these acts will continue and will continue to cause serious and irreparable injury to Plaintiffs and their goodwill and reputation.

**COUNT SEVEN**
**(Common Law Trademark Infringement**
**and Unfair Competition)**

95.     Plaintiffs incorporate by reference the preceding allegations set forth as though fully set forth herein.

96.     Defendants' use of the RESTORATION HARDWARE Marks and marks confusingly similar thereto constitute a reproduction, copying, counterfeit, and/or colorable imitation of the RESTORATION HARDWARE Marks and "RESTO" in a manner that is likely

-18-

to cause confusion or mistake or that is likely to deceive consumers.

97.     Defendants' activities complained of herein constitute forms of unfair competition under Illinois common law.

### COUNT EIGHT
### (Breach of Contract)

98.     Plaintiffs incorporate by reference the preceding allegations set forth as though fully set forth herein.

99.     Restoration Hardware, Inc. and Defendants entered into the Settlement Agreement on January 29, 2015.  The Settlement Agreement is a lawful and binding contract between Defendants and Restoration Hardware, Inc.

100.    Restoration Hardware, Inc. has performed all of its obligations under the Settlement Agreement.

101.    Defendants, through their actions complained of herein, have materially breached the Settlement Agreement.

102.    As a direct and proximate result of Defendants' actions and breach of the Settlement Agreement, Restoration Hardware, Inc. has suffered damage and injury in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants Haynes Furniture Company Incorporated, New Venture Holdings, LLC d/b/a The Dump, and Highland Lombard, LLC, jointly and severally:

A.      For a temporary, preliminary and permanent injunction against Defendants and each of their affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all persons in active concert or participation with them who receive actual notice of the Order, by personal service or otherwise:

1.      Restraining and enjoining the use of any of the RESTORATION HARDWARE Marks, or any other reproduction, counterfeit, copy, colorable imitation or

2011510050_4

confusingly similar variation of the RESTORATION HARDWARE Marks (including but not limited to "RESTO" and "RESTORE") without Plaintiffs' permission; the use of the RESTORATION HARDWARE Marks, or any other reproduction, counterfeit, copy, colorable imitation or confusingly similar variation of the RESTORATION HARDWARE Marks (including but not limited to "RESTO" and "RESTORE") in communications with public media distributed to or within the United States without Plaintiffs' permission; the use of the RESTORATION HARDWARE Marks, or any other reproduction, counterfeit, copy, colorable imitation or confusingly similar variation of the RESTORATION HARDWARE Marks (including but not limited to "RESTO" and "RESTORE") in sales pitches to customers at Defendants' stores; or in any other manner suggesting in any way that Defendants and/or their activities, services or products originate from, are affiliated with or authorized by Plaintiffs, or that Plaintiffs and/or their activities, services or products are affiliated in any way with Defendants without Plaintiffs' permission.

2. Restraining and enjoining the use of any other mark, term, slogan, tagline or phrase without Plaintiffs' permission which suggests or tends to suggest in any way that Defendants and/or their activities, services or products originate from, are affiliated with, or authorized by, Plaintiffs, or that Plaintiffs or their activities, services or products are affiliated in any way with Defendants, or that the furniture sold in Defendants' store is identical, or the same as, the furniture sold in Plaintiffs' stores, including but not limited to any reference to Plaintiffs through the size of Plaintiffs' catalogs or other unique identifier.

3. Preserving and providing for inspection by Plaintiffs or its designated representatives at least one sample of each item offered for sale by Defendants as allegedly from "Restoration Hardware," the same as "Restoration Hardware" furniture, or comparable in quality to "Restoration Hardware" furniture and/or from the same manufacturer.

4. Restraining and enjoining the use and/or importation in connection with any goods or services, any false or deceptive designation, description or representation, whether by words or symbols, which suggests or implies any relationship with Plaintiffs or gives

Defendants an unfair competitive advantage in the marketplace.

      B.     That in accordance with 17 U.S.C § 503(a) (1)(A) all devices containing copies of the RH Copyrighted Works, which are in Defendants' possession, control, or within their distribution channels, be impounded and destroyed as the Court shall direct;

      C.     That in accordance with 15 U.S.C. § 1118, all materials, packaging, labels, tags, pamphlets, brochures, signs, sales literature, stationery, advertisements, billboards, banners, posters, documents and the like in the possession or under the control of Defendants and their affiliates, and all plates, molds, matrices, negatives, masters and other means of making the same, which might, if used, violate the Order herein granted, if any, be delivered up and destroyed as the Court shall direct.

      D.     That in accordance with 15 U.S.C. § 1116, Defendants file with the Court and serve on counsel for Plaintiffs within thirty (30) days after service on Defendants of such Order, or within such extended period as this Court may direct, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the Order.

      E.     For an award of Defendants' profits and Plaintiffs' damages resulting from Defendants' unlawful acts set forth herein, in an amount to be proven at the time of trial, together with legal interest from the date of accrual thereof.

      F.     For entry of judgment that Defendants shall pay actual damages and profits, or statutory damages of $150,000 per work, pursuant to 17 U.S.C. § 504, at the election of Plaintiffs;

      G.     For an award of treble damages, in an amount to be proven at the time of trial, pursuant to 15 U.S.C. § 1117, or, at Plaintiffs' election, statutory damages in the amount of $2,000,000.

      H.     For an award of punitive damages and/or increased profits, in an amount to be proven at the time of trial.

      I.     For an award of attorneys' fees incurred by Plaintiffs in this action.

      J.     For an award of costs of this action.

K.      That Plaintiffs be awarded such other and further relief as the Court may deem equitable and proper.

Respectfully submitted,

DATED:  November 16, 2016       By:     /s/Bart A. Lazar
                                        Bart A. Lazar (6195086)
                                        BLazar@seyfarth.com
                                        SEYFARTH SHAW, LLP
                                        131 S. Dearborn Street
                                        Chicago, Illinois
                                        Phone:  (312) 460-5986


                                        Michael J. McCue (*pro hac vice* pending)
                                        mmccue@lrrc.com
                                        Aaron D. Johnson (*pro hac vice* pending)
                                        adjohnson@lrrc.com
                                        LEWIS ROCA ROTHGERBER CHRISTIE LLP
                                        4300 Bohannon Drive, Suite 230
                                        Menlo Park, California  94025
                                        Tel: (650) 391-1380
                                        Fax: (650) 391-1395

                                        *Attorneys for Plaintiffs*
                                        *Restoration Hardware, Inc. and RH US, LLC*

2011510050_4